**FILED**

**August 31, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **K.H. and G.H.**

**No. 22-0125** (Harrison County 21-JA-151 and 21-JA-152)

## MEMORANDUM DECISION

Petitioner Mother M.D., by counsel Allison S. McClure, appeals the Circuit Court of Harrison County's January 28, 2022, order terminating her parental rights to K.H. and G.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem, Jonathan Fittro, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, petitioner's counsel notes that she is filing petitioner's brief in accordance with Rule 10(c)(10)(a) of the West Virginia Rules of Appellate Procedure, which provides as follows:

> Counsel must engage in a candid discussion with the client regarding the merits of the appeal. If, after consultation with the client, the client insists on proceeding with the appeal, counsel must file a notice of appeal and perfect the appeal on the petitioner's behalf. The petitioner's brief should raise any arguable points of error advanced by the client. Counsel need not espouse unsupportable contentions insisted on by the client, but should present a brief containing appropriate citations to the appendix and any case law that supports the assignments of error.

1

The DHHR filed a child abuse and neglect petition against petitioner in April of 2021. Specifically, the DHHR alleged that it began an investigation into petitioner after receiving a referral that the family lacked suitable housing. A Child Protective Services ("CPS") worker located the children at school, and they reported that they had just moved into a new apartment the night before. The children denied observing petitioner abuse drugs but admitted that they did not attend school often and that they sometimes went hungry at home. Following her interview with the children, the CPS worker spoke with petitioner, who confirmed that they had moved into a new apartment the night before. Petitioner admitted that there were no utilities hooked up in the home yet, that there were no beds, and that there was no food but stated she planned to address those issues that day. The CPS worker implemented a temporary protection plan due to the lack of resources and placed the children with petitioner's boyfriend's mother while petitioner addressed the issues in the home. Approximately one week later, the children were returned to petitioner's care after she had obtained utilities, food, and beds for the home, and an in-home safety plan was implemented.

The DHHR alleged that, approximately three days after the children were returned, petitioner was evicted from her apartment and left the children in the care of their aunt and uncle. The CPS worker investigated the matter and spoke to the children's aunt, who reported that petitioner had seen the children only twice since she left them in the aunt's home approximately one week prior. The aunt and uncle voiced concerns that petitioner was abusing drugs. The CPS worker changed the safety plan to an out-of-home safety plan and asked petitioner to submit to a drug screen. Petitioner agreed, and thereafter submitted to three drug screens between May 4, 2021, and June 1, 2021, all of which were positive for methamphetamine and amphetamine. Accordingly, the DHHR alleged that petitioner neglected the educational needs of the children, failed to provide them with a stable home and necessary food, and had a substance abuse problem.

The circuit court held an initial adjudicatory hearing in July of 2021. However, petitioner's counsel requested that the matter be continued due to concerns that petitioner was under the influence of drugs. The circuit court continued the hearing and suspended visits between petitioner and the children as she had not been attending scheduled visitations with the children, which upset them. The circuit court reconvened the adjudicatory hearing later in July of 2021. Petitioner did not appear at the hearing, but her counsel was present and represented her at the hearing. The DHHR filed records of petitioner's drug screens and presented the testimony of an attendance director from the children's school, a CPS worker, and the children's aunt. At the close of evidence, the circuit court adjudicated petitioner as an abusing parent.

Subsequently, petitioner completed a detoxification program and entered an inpatient substance abuse treatment program. Petitioner filed a motion for a post-adjudicatory improvement period, citing to her progress, and indicated that she would participate in services. At a hearing held in August of 2021, the circuit court granted petitioner's motion for a post-adjudicatory improvement period, the terms of which required her to submit to drug screening, participate in parenting and adult life skills classes, participate in visits with the children, complete a parental fitness evaluation, obtain housing and employment, and maintain contact with the DHHR.

The day after petitioner was granted an improvement period, she checked herself out of her inpatient treatment program against medical advice and, thereafter, ceased submitting to drug screens. In October of 2021, the DHHR filed a motion to terminate petitioner's improvement period, and the circuit court held a hearing on the motion in November of 2021. Petitioner was not present for the hearing, but her counsel was present and represented her. The DHHR presented evidence that petitioner had missed thirteen drug screens, and her counsel admitted that she had not heard from petitioner "for quite some time." As such, the circuit court terminated petitioner's improvement period and set the matter for disposition.

In January of 2022, the circuit court held a dispositional hearing. Petitioner once again failed to appear but was represented by her counsel, who was present at the hearing. The DHHR presented the testimony of a CPS worker and the children's aunt, and submitted petitioner's drug screen report into evidence. The circuit court took judicial notice of the adjudicatory hearing and the hearing on the DHHR's motion to terminate petitioner's improvement period. At the close of the hearing, the circuit court found that petitioner had been offered services through the DHHR but that she did not comply with the services. The circuit court also found that petitioner had left her substance abuse treatment program after an "extremely" short stay and that she had not submitted to a drug screen since August 13, 2021. The circuit court found that petitioner had not maintained contact with the DHHR or the kinship placement of the children, nor had she seen the children or provided anything for them. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the January 28, 2022, dispositional order terminating her parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights to the children. According to petitioner, there was a reasonable likelihood that she could improve the

---

[2]The children's father is deceased. The permanency plan for the children is adoption by relatives.

conditions of neglect in the near future and that termination was not necessary for the children's welfare. Petitioner argues she "participated enough" such that a less restrictive disposition should have been employed. Petitioner points out that the children were in a stable relative placement and were "not of tender years" and that termination of her parental rights was not necessary.

We disagree. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Although petitioner completed a detoxification program and entered inpatient treatment, she left treatment against medical advice only one day after she had been granted an improvement period. Thereafter, petitioner completely absented herself from the proceedings and failed to attend several hearings, including her dispositional hearing. Evidence presented at the dispositional hearing established that petitioner had missed at least thirteen drug screens and had not had contact with her counsel or the DHHR for quite some time. The evidence also established that petitioner had not visited with or provided for the children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Petitioner was also reportedly unemployed and homeless. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Such findings are sufficient to support the termination of her parental rights. While petitioner argues that the circuit court should have imposed a less restrictive alternative to the termination of her parental rights, this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, we find no error in the circuit court terminating petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 28, 2022, order is hereby affirmed.

4

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn